Good morning. Good morning. Good morning, Your Honors, and may it please the Court. My name is Michelle Cornell Davis, on behalf of Leonard Lawson. My fellow student, Mr. Snyder, and I are with Loyola Law School's Ninth Circuit Clinic. I will be addressing the warrant interpretation issue first, and then Mr. Snyder will address the exigency and protective sweep issues. We would like to reserve one minute for rebuttal. Okay, since you're both law students and things tend to get away from each other, I'm going to try to help you with that, but just know that the clock goes down. Okay. So just keep your eye on it, and we'll try to help, okay? Thank you, Your Honor. You're welcome. Your Honors, defendants engaged in a parade of misconduct that began with sending in a malfunctioning device and ended with overrunning Mr. Lawson's home for four hours. Do you think that was intentional, the malfunctioning device? Your Honor, the defendants, the surveilling agents, knew at the time that it was sent in that it was malfunctioning, yes. This conduct... Let me be sure I understand it. Are you saying that they intended it to malfunction, or they simply were aware of it and did nothing about it? The latter, Your Honor. Okay. Yes. This conduct harmed Mr. Lawson... Yes, Your Honor. And so they couldn't interpret the going off as meaning that somebody had opened it. Is that essentially where you're going? Yes, Your Honor. Yes, exactly. And this conduct harmed Mr. Lawson, and at the very least, he is entitled to a trial so that a jury can decide the disputed factual issues at hand. Well, as you know, counsel, and we, of course, struggle with the qualified immunity doctrine, but what we're dealing with here is a situation like with the warrant, which you're focusing on. We're told that that should be interpreted in a common-sense way. Under the circumstances, and you look at the warrant, the exact language didn't cover this, but it did seem to contemplate that something could go wrong, right? Do you agree with that? Your Honor, the conditions covered three specific circumstances, and given that U.S. v. Grubbs clearly establishes the lawful floor for anticipatory warrants, which is that the conditions must be tied to probable cause, the evidence of a crime is occurring on the premises described. Well, that's not really a problem here, is it? I mean, they put these, what the defendants thought were drugs, in a FedEx package. They had the device in the package. Unbeknownst to the agent that actually delivered the package, the device had malfunctioned. But they had every reason to believe, based upon their information, that there were people who were going to sell these drugs. So the probable cause issue is less of an issue in terms of the initial entry than it is later. Isn't that correct? Your Honor, knowing the law in Vessi-Kuru and U.S. v. Grubbs, any reasonable officer would know that the warrant here contemplated a failure to transmit after it had reached the location, not while in police custody. Right. So if that were, if it, there would be no point in having the beeper, I take it, if they could just go in knowing that somebody was, on the assumption that somebody was going to receive the drugs. Your Honor, effectively, it's a pre-satisfied condition, and their interpretation severs that condition from the probable cause the magistrate judge intended for it to be connected to. And therefore, their interpretation is unreasonable, because it allows them to operate below the minimum requirement clearly set forth in Grubbs. But in this case, you've got a situation where, obviously, there's the one officer who was supposed to have read it and knew it, but the rest of them were simply following the instructions of their chief, if you will. Isn't that correct? Your Honor, it's not. The duty for line officers is that they need to inquire as to the scope of the warrant and make sure that they understand. Although they had an advantage. Are you suggesting that under Grubbs, it is essential that every officer, let's just say hypothetically there were ten officers, one was the chief. Are you saying that every one of the other nine has to say to the chief, by the way, has each aspect of the warrant been satisfied? That's high competence, is it? Your Honor, although they had an advanced briefing, based on Clementson's suppression hearing testimony, it's not at all clear that he really understood the scope of what he was supposed to be doing. The lead officer? Defendant Clementson, Your Honor, one of the line officers. Okay. And given that that testimony conflicts with the advanced briefing, it is a tribal issue of fact as to whether or not the line officers really understood what was going on. Well, again, we struggle with this all the time, given what the Supreme Court has given us. But the reality is they're saying that all but the plainly incompetent, you basically have to show they intentionally, knowingly violated the constitutional rights of your client. And in this case, you've got this officer carrying the FedEx package. He knew there was a device in there. He didn't actually know, if I understand the record correctly, that the device had malfunctioned before he delivered it, right? Correct, Your Honor. You can't really fault him, right? Well, there's a tribal issue of fact as to whether or not they could have actually stopped him before delivery. Would that have been necessary? It's one thing that they could have done, as opposed to the unreasonable action that they took here in this case. And, Your Honor, I can see that I'm coming up on time, and I want to keep answering your questions. Go ahead. We are especially nice to lots of people. I also want to leave time for Mr. Snyder. Sure. We understand. I would just conclude by saying it's unreasonable to think that the condition could be tied to probable cause. And, you know, it did not fail to transmit. It continued to transmit the entire time. For these reasons, they are not entitled to qualified immunity. Thank you. Thank you very much. Good morning, counsel. Good morning, Your Honors. Morning. Morning. You're going to argue exigent circumstances? Is that? Yes, Your Honor. Okay. My name is Ryan Snyder. I've got a question for you right off the bat. Of course. Please. You have to tell us your name first. My name is Ryan Snyder, and I'm here to represent Mr. Leonard Lawson. All right. Yeah. Knowing that the beeper was malfunctioning, what were the officers to do? Because they didn't know when the package was going to be opened. And in order to protect the contents of the package, what were they to do? What were their alternatives? The officers had a number of choices that they could have taken to remedy the situation here. The warrant authorized the officers to enter the Stelloplace residence, which was the first residence that the package was delivered to. So they had 15 minutes while the package was inside. They were simply waiting outside. They certainly could have gone in there to retrieve the package, Your Honor. After that... You mean the first residence? Yes. Okay. After that, Lisa Valcarcel picked the package up from the first residence, and she drove to Mr. Lawson's house. The officers followed her for 30 minutes. Any one of those 30 minutes, they could have pulled Lisa Valcarcel over and retrieved the package, Your Honor. Speaking of her, isn't that one of the concerns we have in terms of exigent circumstances? They didn't know. She may very well have seen them, knowing that she was under surveillance. Were they not concerned potentially that she was going to notify them that she was about ready to be arrested and they better get out of the house? Your Honor, for exigent circumstances, the officers need specific and articulable facts demonstrating an emergency. But here, the defendants have no concrete facts that there was an emergency. That's not the way police operate. The question is, what would a reasonable officer do under the circumstances? If she had called and said, the cops are after me, get out of there, the whole scheme would have gone up in smoke, so to speak. And I don't mean in the way they intended to use it. Would that not constitute an exigent circumstance that the police should have been worried about? Your Honor, it might. However, this court and driver, a public decision, said that the officers may not speculate as to what may or might have been the circumstances. They need specific facts demonstrating exigent circumstances. In driver, the court held that there were no exigent circumstances, even though the main suspect who had received the controlled delivery package was alone with the package and indicated a concern about the package. That was not enough to establish that destruction of evidence was imminent. Here, the officers merely knew that a package was in the house and there were two people inside. Relative to the driver, the government has not established their, has not met their burden that there are exigent circumstances here. But the officers didn't know when the package was going to be opened. The defendant in this case, Mr. Lawson, could have opened the package, destroyed the evidence, and the officers never would have known about that. Your Honor. That's a scenario, isn't it? I mean. That's correct, Your Honor. But the standard for exigent circumstances are specific facts here. And while that could have been the case, we don't know what actually happened. And to meet exigent circumstances, that is insufficient. In addition, the defendants violated Mr. Lawson's clearly established rights when they conducted a protective sweep that exceeded the limit, the scope of protective sweeps. You're out of time. I'll tell you what we're going to do, since you are two excellent law students. We're going to give you a little rebuttal time, which we would normally not do, so keep that in mind in the future when you're actually practicing. But why don't you have a seat. Let's hear from the government, and then we'll give each of you a minute to come up and rebut. And I know it's going to be brilliant. Thank you, Your Honor. Let's hear from the government, okay? Good morning, Your Honors. May it please the Court, Kathryn Dorsey on behalf of Defendants at Police. Your Honor, the defendants here are entitled to qualified immunity because a reasonable officer in these circumstances could have reasonably concluded that either the warrant, interpreting it in a common-sense way, authorized their entry into the premises. Let's say that hypothetically that I agree with you about the warrant. I've got real problems with the protective sweep, both of them. You've got a situation here where they, as I understand it, took 64 photos. They obtained luggage tabs, information. They recovered a black container hidden behind the computer. They, in quotes, accidentally bumped the computer, removed the screensaver, got all kinds of private information. How can that legitimately be part of a protective sweep? The protective sweep here, we think, Your Honor, was consistent with the Fourth Amendment in that they were looking for dangers for the officers. But wait a minute. They were looking behind the computer screen for dangers for officers? Well, it's unclear on the record whether that actually happened or not. And to the extent there was in the criminal case, they suppressed some of that evidence from the sweep. They certainly did. So as to that, there's no damages. So even if this Court were to conclude that there was a constitutional violation with the scope of the protective sweep, the officers here could have reasonably concluded that what they were doing was consistent with the Fourth Amendment in that they conducted this two-phase protective sweep where they were just looking for dangers and hazards. They cleared it. The record evidence shows that the protective sweep took 5 to 10 minutes, that that was total. It was two phases, 5 to 10 minutes for the entire thing, Your Honor. The first was a quick search through for people. And then the secondary, they had to do things like clear the crawl space with a mirror. They had to wait for somebody to come in with a mirror. Weren't the photos taken on the first sweep? The photos weren't part of that. The photos were taken much later. They were actually taken before they obtained the search warrant. And they were taken by members of the National Guard. And that was to document before the actual search pursuant to the search warrant occurred so that they could show later what had been moved by the search warrant. The purpose of a protective sweep, as you've indicated, is to protect the safety of the officers. I can't see, unless it's some kind of special new device, that a luggage tag has anything whatsoever to do with the personal safety of the officers. Can you enlighten me in what way it is? Well, Your Honor, it's not clear, again, that that was part of the protective sweep. The protective sweep took 5 to 10 minutes. If they did find that, again, the district court suppressed that evidence from the luggage tag. But again, what we're dealing with here, correct me if I'm missing something, this is a 1983 action, among other things, where they're saying, okay, I was criminally charged, I was exonerated or the evidence was suppressed. Now I want the officer who are responsible for violating my constitutional rights to pay me damages because I've been damaged. So in this case, how is qualified immunity appropriate in connection with the protective sweep when the district court certainly found that that was, and our court particularly found, that it was violative of their constitutional rights and not part of any warrant? Well, this Court previously did not rule on the protective sweep, Your Honor. It ruled on the ‑‑ there was an unlawful entry and that there were no exigent circumstances. This Court has not before addressed the protective sweep. District court. District court did all right. In the criminal case, yes. Right, exactly. Yes. But in terms ‑‑ but part of it is Bivens is a suit for damages, Your Honor, and here there are ‑‑ even if there was a constitutional violation, there are no damages because the damages would be the admission of evidence obtained unlawfully and here the district court suppressed any evidence. Let me ask you this. What is the authority for that, that there's no violation of the ‑‑ that there can be no injury, there's no damages are available for a violation of the Fourth Amendment if the evidence is suppressed? I don't know if that we have case law directly on point for that, Your Honor, but they ‑‑ certainly plaintiffs have not pointed to any damages resulting from the protective sweep. Again, because the evidence was suppressed. But I also think the officers acting here in the heat of the moment in doing the protective search looking for dangers, their search that they conducted was ‑‑ they could reasonably believe was consistent with the Fourth Amendment, looking for some things to clear the crawl space and especially after they found a shotgun to do a search. And the fact there's some disagreement about when some of these other things happened and whether they were in plain sight or not, like the luggage tags and reading them. But again, even if that was a constitutional violation, it's not clear that a reasonable officer here couldn't have either believed he was acting consistent with the law and there are no damages in any event, Your Honor. Okay, Ms. Dorsey. And I'm curious, when we talk about a protective sweep, we're really talking about searching for people in the premises that might create some harm or danger to the officers or to others. That's correct, Your Honor. And it's ‑‑ I think the record reflects that they pretty quickly found out who was there and kind of held them off to the side. And I think the defendant was kept in the garage or something like that and arrested. So there's really no basis for going beyond that once they get all the people in custody and ‑‑ Respectfully, I disagree, Your Honor, because for one, they had incorrect information as to the number of people in the house. Ms. Valcarcel, after she was taken into custody, she had told the officers there were two individuals in the house. When they got there and found four individuals, that was already inconsistent with the information they knew. So that gave them extra reason to make sure that there were no other individuals in the house. And then in addition with the shotgun being found in the house, that was an extra hazard. So there was very good reason for the officers to do a thorough protective sweep here to make sure there were no dangers to the officers or the others in the house. Are the officers authorized to search for weapons in the premises as part of a protective sweep? Weapons in plain view, Your Honor, or where people could be hiding. I mean, they obviously can't go rummaging through desk drawers. And even at this stage, aren't we supposed to look at the evidence in the light most favorable to the nonmoving party? And so if Mr. Lawson and his family members allege certain facts, we have to look at the evidence in the light most favorable to them when we decide this what the facts are. That's correct, Your Honor. Here I would like to address, I know plaintiff alleges there are some factual disputes here regarding the protective sweep because there was testimony, I believe, that the mother or mother-in-law or the aunt heard rummaging noises and that some CDs were disturbed. But we don't think that rises to the level of a material factual dispute here because that was speculation about what they were hearing. Could have been the noises about the officers moving about while they were in the house waiting for the search warrant. There wasn't any evidence that this, although they were in the house for the four hours while they waited for the search warrant, there's no evidence in the record that there was an ongoing search that whole time. The evidence is that the protective sweep took five to ten minutes and they were waiting for the search warrant. And there's also evidence of the photographic evidence which showed the CDs that they speculated had been rummaged about and were not moved until the actual search warrant. Which were the pictures being taken? Those were taken by members of the National Guard and that was to document they took those right before the search warrant was executed so that they would have before and after pictures to document what got moved. And in any case, even if this court, we think both on the unlawful entry and the exigent circumstances that the warrant authorized the entry and the exigent circumstances. Would you tell me again as to how the warrant authorized the entry since the warrant was conditioned on these things happening that didn't happen? Well, the warrant was, one of the conditions in the warrant was if the package was delivered to another location, not the first one, but to another location and the device failed to transmit. And here a common sense reading that the officers could have had was that it failed to transmit properly. And that is consistent and It was transmitting. And that's failing to transmit? Failed to transmit properly, Your Honor, because there were two pieces of information. The warrant said what? Fails to transmit. Yes. But a common sense reading, the officers could have reasoned, an officer could have reasonably concluded that fails to transmit included failed to transmit properly because there were two pieces of information the transmitter was supposed to deliver. One was the location, so which would make a noise depending where the box moved to. The second was it was to do a constant beeping noise when the package was open. It's clear that while the delivery was in place, that malfunctioned, and so the package was not going to transmit when the package was in fact opened. And so what do you do with the prior panel's conclusion that the warrant didn't authorize the entry? So obviously this Court has already held that the warrant didn't authorize it. We believe that on the case law at the time, a reasonable officer could have concluded that the warrant was satisfied based on other cases this Court has had about common sense interpretation, like the Gorman case where it held that a search of the residence could include a search of the curtilage, where the Marcus case, a search for narcotics could include a search for methamphetamines despite the different statutory definitions. So I think that your argument now is inconsistent with what we held earlier. No, Your Honor, not at all, because, again, that's what a reasonable officer and the Ninth Circuit previously did not address the qualified immunity analysis but only the constitutional issue. Other questions by my colleagues? I don't. Thank you. Thank you, Your Honor. All right. Thank you very much for your presentation. Let's here give you each one minute. You don't have to take it, but if you want it, you're welcome to have it. Your Honors, two quick points regarding the protective sweep. This Court in Cuevas denied qualified immunity to an officer that opened one drawer. The Court there acknowledged that the damages might be minimal, but that is a question for the jury. That is not a question that's appropriate on summary judgment here. In addition, as counsel acknowledged, there are triable issues as to what the officers uncovered during the protective sweep. The panel, Your Honors, have noted that they uncovered detailed information on luggage tags, information on the computers. The government states that perhaps that information was uncovered later, but those are triable issues of fact. Let me ask you this. As my colleague suggested, we, of course, had the criminal case before. This is a civil case. What role, if any, do the determinations of our prior panel or, for that matter, the district court play on our qualified immunity analysis here? Is there anything like law of the case or anything of that nature that would apply? Your Honors, questions of issue preclusion have not been briefed in this case. We'd be happy to supply a supplement of briefing on that issue. No, that's okay. However, the magistrate judge suppressed this evidence, and that was an acknowledgment that the protective sweep exceeded the scope of the lawful protective sweep. Other questions? The other side has it argued that we're not bound by what the prior panel said, to the extent that it said anything relevant to this case. That's correct, Your Honor. So you agree that there's a different standard. Like in the criminal case, there was a technical Fourth Amendment violation, and that's one standard. But for qualified immunity and for these 1983 suits, there's another standard that deals with reasonableness. Do you agree with that? That's correct, Your Honor. Okay. All right. Thank you. Thank you. You're going to have something? You've had enough. Okay, please. Your Honors, I'd just like to clarify as to the device failing to transmit. This device can only transmit one tone at a time. So it is either transmitting the steady default tone, or it is transmitting the alarm tone. The issue here is that it switched tones early, not that it ever failed to transmit. From beginning to end, it was transmitting. Okay. Thank you. Any other questions? No. Thank you. The case is argued as submitted. We want to thank Loyola Law School and these two very fine law students. I'm sure you're going to make outstanding lawyers. You did a great job. And hopefully this hasn't been too unpleasant an experience for you. So however it comes out, just know that this is an incredibly important part of our system. It allows people to vent their concerns and frustrations with due process, be heard,  So thank you very much to all parties. The case is argued as submitted.
judges: Schroeder, M. Smith, Drain